FILED'11 APR 7 14:47USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**LINDA A. HENSON,**                                                      Civil No. 09-3015-CL

        Plaintiff,                                                **REPORT AND RECOMMENDATION**

v.

**NEW YORK LIFE INSURANCE
COMPANY,**

        Defendant.

CLARKE, Magistrate Judge:

       This action for breach of an insurance contract by plaintiff Linda A. Henson was removed to this court by defendant New York Life Insurance Company. Plaintiff seeks economic damages, specific performance, and costs and attorney fees. This court has jurisdiction pursuant to 28 U.S.C. § 1332. Defendant has filed a motion for summary judgment (#25) as to plaintiff's first amended complaint,[1] which plaintiff opposes. For the reasons set forth below, Defendant's

---

[1] Defendant's motion for summary judgment addresses plaintiff's claim related to ARDI extended benefit coverage. After defendant's motion was filed, the matter was stayed and, after the stay was lifted, the court allowed plaintiff to file an amended complaint which added a claim under the residual rider. Defendant filed a supplemental memorandum which addresses the added claim and a concise statement, and plaintiff then filed her response.

Report and Recommendation - 1

motion should be granted.

## FACTUAL BACKGROUND

Construing the facts in the light most favorable to the non-movant, the record reveals the following[2]:

On April 10, 1991, plaintiff Linda A. Henson signed and submitted an application for disability income insurance to defendant New York Life Insurance Company (the Application). The Application sought a $1,000 monthly benefit for a benefit term of five years under the Primary Plan; an extended benefit term to age 65 under an ARDI option; and a Rider for residual disability insurance income (the Rider or the Residual Rider). (White Decl. ¶¶ 3, 4 & Ex. 1 at 26; Henson Decl. Ex. 1 at 22; Henson Dep. at 19-20.) Plaintiff did not make any payment with the April 10, 1991, application. (White Decl. ¶ 5; Henson Dep. at 66.)

Following review of plaintiff's medical record, Defendant prepared an Amendment, referencing plaintiff's Application dated April 10, 1991. The Amendment includes the following language:

- "NOTE: This requirement must not be changed or modified in any way, but remain as made out by the Home Office."

- "The NEW YORK LIFE INSURANCE COMPANY will please accept the following answers *in lieu of* the answers to the corresponding questions in my application for insurance dated as indicated above." (Emphasis added.)

- immediately below this language and referring to question 7(A), the Amendment

---

[2] Only those facts pertinent to the motion and necessary for an understanding of the Court's ruling are included.

Report and Recommendation - 2

provides as to "DISABILITY INCOME," a monthly benefit of $1,000 for a benefit term of five years under the Primary Plan, and a Residual Rider; the space for an extended benefit term to 65 under the ARDI option is blank.

- below this language and above the signature line, is the language: "and I hereby agree that the above answers shall form a part of my said application for insurance, the agreement in which I hereby renew and confirm, and shall apply to any policy issued thereon."
(White Decl. ¶¶ 9-13 & Ex. 1 at 24; Henson Decl. Ex. 1 at 28.) Plaintiff signed the Amendment, dated April 26, 1991. (White Decl. Ex. 1 at 24; Henson Decl. Ex. 1 at 28; Henson Dep. at 19-20, 82.)

Plaintiff executed a Rider to change the effective date of the proposed policy from April 26, 1991, to June 20, 1991. (White Decl. ¶ 14 & Ex. 1 at 1, 19; Henson Decl. Ex. 1 at 29.)

Defendant relied upon the statements and representations plaintiff made in the April 10, 1991, application and the April 26, 1991, amendment to the application to issue policy #H3185216 to plaintiff on June 20, 1991, to assess the risks assumed in issuing the policy and to set the premium plaintiff paid for the coverage provided under the policy. (White Decl. ¶¶ 8, 15, 17.)

Plaintiff paid the first premium payment and accepted delivery of the Policy on June 20, 1991. (White Decl. ¶ 18; Henson Dep. 39.) Plaintiff reviewed the Policy at the time it was delivered to her and within the 10-day "free examination" period provided for in the Policy. (Henson Dep. 63-64, 86; White Decl. Ex. 1 at 1.)

The insurance policy also includes other pertinent provisions:

- the "Benefits" section of the Policy provides in relevant part under **"Primary Plan**,"

that a monthly income benefit for total disability is $1,000. It further provides:

> BENEFIT TERM: 5 YEARS, IF TOTAL DISABILITY STARTS BEFORE AGE 60; TO AGE 65 OR 2 YEARS, WHICHEVER IS LONGER, IF TOTAL DISABILITY STARTS AT OR AFTER AGE 60.
>
> SUPPLEMENTARY BENEFITS:
> RESIDUAL DISABILITY

(White Decl. Ex.1 at 2; Henson Decl. Ex. 1 at 2.)

- in the "**DEFINITIONS**" section of the policy, "**Benefit Term**" is defined as:

> A period of time for which monthly income benefits are payable for disability due to the same cause. It starts on the day after the Elimination Period ends. It goes on until (1) the insured is no longer disabled, or (2) the end of the Maximum Benefit Term shown on the Data page, or (3) the death of the Insured, whichever occurs first.

(White Decl. Ex. 1 at 4; Henson Decl. Ex. 1 at 5.)

- under the section of the policy headed "**BENEFITS**," is the following: "**Benefits for Disability** This policy provides monthly income benefits for disability. When the term "disability" is used alone, it means total disability, as defined in this policy." (White Decl. Ex. 1 at 6.)

- the Residual Rider included in the Policy provides in part that, "The Benefits for Disability provision" is deleted and the following is substituted: "**Benefits for Disability** This policy provides monthly income benefits for disability. When the term 'disability' is used alone, it means total disability or residual disability, as defined in this policy." (White Decl. Ex. 1 at 14.)

- the Residual Rider also includes at paragraph 3:

The following is added to the Benefits section:

Report and Recommendation - 4

> **Monthly Income Benefit for Residual Disability** This benefit becomes payable as follows: premiums must be paid as called for in the Premiums section and the Elimination Period must be satisfied.
>
> Then, beginning with the Income Starting Date and while residual disability goes on continuously, we will pay a Monthly Income Benefit for Residual Disability for each calendar month of residual disability. This benefit is not payable:
>
> >    (a) If a Monthly Income Benefit for Total Disability is payable; or
> >
> >    (b) after age 65.
>
> The benefit is payable at monthly intervals during the benefit term for each calendar month of residual disability. . . .

(White Decl. Ex. 1 at 14.)

> - in the "**GENERAL PROVISIONS**" section of the policy is the following:
>
> **Entire Contract**. The entire contract consists of this policy, any attached riders or endorsements, and the attached copy of the application. Only the Chairman, the President, the Secretary or one of our Vice Presidents can change the contract, and then only in writing. No change will be made in the contract unless you agree to it in writing. No agent is authorized to change this contract.

(White Decl. Ex. 1 at 11; Henson Decl. Ex. 1 at 13.)

Plaintiff submitted a claim for total disability benefits under the Policy in 2001. (Henson Dep. 40.) Defendant paid plaintiff and plaintiff accepted $1,000 per month for five years, from December 12, 2001, through December 12, 2006. (Henson Dep. 40-41.)

Plaintiff submitted supplemental statements to defendant in March 2006 and May 2010, including statements from her treating physician, in which it was represented that she has not recovered and that she has not worked or had any income since September 2001. (Suppl. Concise Statement Exs. B-D.)

Report and Recommendation - 5

## STANDARD FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c), summary judgment "should be rendered, if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986). Summary judgment should be

Report and Recommendation - 6

granted for the movant, if appropriate, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. Fed. R. Civ. P. 56(e); THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

## ANALYSIS

### Extended Benefits to Age 65 Under the ARDI Option

Defendant contends that the policy it issued and plaintiff accepted, dated June 20, 1991, by its plain terms, has no provision for the extended benefit coverage to age 65 (ARDI) which plaintiff seeks. Plaintiff responds that the insurance contract is ambiguous. She argues that, because the policy provides that the "entire contract" includes "the attached copy of the application" and that application, which is attached to the policy delivered to her, includes an ARDI monthly benefit of $1,000 for a benefit term to age 65, she is entitled to disability payments until age 65. Defendant replies that the amended application is part of the policy and supersedes the initial application.

In Oregon, the courts engage in a three-step inquiry when interpreting contracts:

> "When considering a written contractual provision, the court's first inquiry is what the words of the contract say . . . . To determine that, the court looks at the four corners of a written contract, and considers the contract as a whole with

Report and Recommendation - 7

> emphasis on the provision or provisions in question. The meaning of a disputed text in that context is then determined. In making that determination, the court inquires whether the provision at issue is ambiguous. Whether terms of a contract are ambiguous is a question of law. In the absence of an ambiguity, the court construes the words of contract as a matter of law."

Yogman v. Parrot, 325 Or. 358, 361 (1997) (quoting Eagle Indus., Inc. v. Thompson, 321 Or. 398, 405 (1995)); Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or., 313 Or. 464, 469-70 (1992). "A contract is not ambiguous merely because the parties disagree about its interpretation. There must be competing interpretations, each of which is reasonable." Biomass One, L.P. v. S-P Constr., 120 Or. App. 194, 200 (1993) (citation omitted).

Plaintiff relies on the fact that the copy of the policy delivered to her includes her signature on the initial Application dated April 10, 1991, but does not include her signature on the Amendment page (Henson Decl. Ex.1 at 23, 28). However, plaintiff admits that she signed the Amendment (Henson Dep. at 20, 82, 91-92) and her signature appears on the policy submitted by defendant (White Decl. Ex. 1 at 24). The court agrees with defendant that the unsigned copy of the Amendment attached to the policy delivered to plaintiff has the same legal effect as the copy she admits she signed and is in defendant's files (White Decl. Ex. 1 at 24).

The parties agree that ORS 742.016 applies to this case. That statute provides in pertinent part that,

> Except as provided in ORS 742.043 [relating to binders for temporary insurance], every contract of insurance shall be construed according to the terms and conditions of the policy. When the contract is made pursuant to a written application therefor, if the insurer delivers a copy of such application with the policy to the insured, thereupon such application shall become a part of the insurance policy. . . .

ORS 742.016(1). In Ives v. INA Life Insurance Co., 101 Or. App. 429, 432-33 (1990), the court

Report and Recommendation - 8

considered whether a transcribed typewritten form of a handwritten application attached to the policy delivered to the insured was a "copy" of the application under the "statutes"–referencing former ORS 743.042(1), ORS 742.016(1) (formerly ORS 743.045(1)), and ORS 743.177. The copy of the typewritten form sent to the insured was not signed but the insurer discovered another part of the typewritten form with the insured's signature in its files. The court determined that, "The requirement that a 'copy' of the application be *attached* to the issued policy insures that the policyholder is provided with everything that the insurer relies on in issuing the policy, *i.e.*, the entire agreement of the parties." Id. at 433. In holding that the typewritten attachment to the policy was a "copy" of the original application, the court noted that the insured signed all parts of the handwritten application and stated: "The **statutes** do not require that the 'copy' be signed." Id. (emphasis added). Further, the insured had signed one part of the typewritten version, which affirmed all three parts.

The insurance contract between the parties here includes the Amendment or Amended Application. By its clear terms, the Amendment / Amended Application does not include the ARDI option. The Amendment includes two changes from the application submitted by plaintiff and an additional term: as to question 7(A), the Amendment / Amended Application leaves blank the space for "IPO Units" and the "ARDI" option, and generally includes a certification relating to occupation duties. (Henson Decl. Ex. 1 at 28; White Decl. Ex. 1 at 24.) The Amendment / Amended Application clearly states that these "answers" are "in lieu of" the answers to the questions in plaintiffs initial Application dated April 10, 1991, and would form a part of the application for insurance and would apply to any policy issued thereon.

As found by the Ives court, the "copy" of the application delivered to the insured and

Report and Recommendation - 9

referenced in ORS 742.016 does not need to be signed. <u>Ives</u>, 101 Or. App. at 433. Thus, the fact that the Amendment / Amended Application is not signed is of no moment. The answers to question 7(a) on the Amendment / Amended Application were "in lieu of" the answers on plainti8ff's Initial Application. The Amendment / Amended Application does not include the ARDI option. There is no other reasonable interpretation of the insurance contract as to the ARDI option and, therefore, no ambiguity is created in the insurance contract by the attachment of plaintiff's Initial Application in the Policy delivered to plaintiff.

What the agent may have told plaintiff and what plaintiff may have understood is not relevant at this step of the inquiry. The determination is made by looking at the four corners of the document only and considering the contract as a whole. <u>Yogman</u>, 325 Or. at 361.

Accordingly, plaintiff's request for the extended benefit to age 65 under the ARDI option is superseded by the Amendment / Amended Application which does not include such a provision. Defendant's motion for summary judgment on this ground should be granted.

### Benefits to Age 65 Under the Residual Disability Rider

Defendant contends that plaintiff has always claimed that she is totally disabled and, therefore, she is not residually disabled. It also contends that the Residual Rider expressly incorporates the Policy's five year benefit term. Plaintiff responds that, because the Policy provides in the Rider a monthly benefit of $1,000 up to age 65 and the Rider does not contain a five year limit, she is entitled to disability payments until age 65.

The Residual Rider included in the Policy provides in part that "The Benefits for Disability provision" providing that the term "disability" used alone means total disability, is

Report and Recommendation - 10

deleted and the following is substituted: "**Benefits for Disability** This policy provides monthly income benefits for disability. When the term 'disability' is used alone, it means total disability or residual disability, as defined in this policy." (White Decl. Ex. 1 at 14; Henson Decl. Ex. 1 at 17.) By the use of the word "or," total disability and residual disability are mutually exclusive under the express terms of the Policy, and an insured may not be both totally disabled and residually disabled at the same time. The record shows that plaintiff has claimed since September 2001 that she is totally disabled. While plaintiff's argument that no part of the Rider states that the residual disability benefits are only payable if the disability is some fraction less than 100 but greater than 20 percent has some appeal, her interpretation would render the Rider's **Benefits for Disability** provision and other parts of the insurance contract meaningless.

Plaintiff also argues that the Rider does not include a five year limit and includes language that the residual disability benefit is "not payable" "after age 65." It is true that the Rider includes language that residual disability benefits is not payable and not effective after age 65. (White Decl. Ex. 1 at 14, 17; Henson Decl. Ex. 1 at 17, 20.) However, paragraph 3 of the Residual Rider provides that language regarding the "Monthly Income Benefit for Residual Disability" is added to the Benefits section. In pertinent part, the language includes the following: "The benefit is payable at monthly intervals during *the benefit term* for each calendar month of residual disability. . . ." (White Decl. Ex. 1 at 14; Henson Decl. Ex. 1 at 17 (italics added).) The term "Benefit Term" is defined in the Policy as: "A period of time for which monthly income benefits are payable for [total *or* residual] disability due to the same cause. It starts on the day after the Elimination Period ends. It goes on until (1) the insured is no longer disabled, or (2) *the end of the Maximum Benefit Term shown on the Data page*, or (3) the death

Report and Recommendation - 11

of the Insured, whichever occurs first." (White Decl. Ex. 1 at 4; Henson Decl. Ex. 1 at 5 (emphasis added).) The only benefit term in the Policy appears at page 2 Benefits page:

> BENEFIT TERM: 5 YEARS, IF TOTAL DISABILITY STARTS BEFORE AGE 60; TO AGE 65 OR 2 YEARS, WHICHEVER IS LONGER, IF TOTAL DISABILITY STARTS AT OR AFTER AGE 60.

(White Decl. Ex. 1 at 2; Henson Decl. Ex. 1 at 2.) Under the Policy's express provisions, the "benefit term" applicable to the Policy, including the Residual Rider, is five years. Consideration of the Policy as a whole supports this interpretation. Plaintiff's interpretation would render other provisions of the Policy meaningless.

The Policy is not ambiguous as it relates to the benefit term for payment of residual disability benefits. Defendant's motion for summary judgment should be granted on this ground.

**Conclusion**

Plaintiff received disability income benefits for five years, the maximum benefit term provided for in the Policy. The parties did not agree to extend the benefit term beyond the five years to age 65 by way of the ARDI option, and the Residual Rider does not apply to the circumstances of plaintiff's disability and, even if it did, it does not extend the benefit term beyond the five years to age 65. Plaintiff has received all the disability income benefits due her under the Policy.

## RECOMMENDATION

Based on the foregoing, it is recommended that Defendant's motion for summary judgment (#25) be granted, and that judgment be entered in favor of defendant and against plaintiff.

Report and Recommendation - 12

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. *Objections to this Report and Recommendation, if any, are due by April 25, 2011. If objections are filed, any response to the objections are due by May 12, 2011,* see Federal Rules of Civil Procedure 72 and 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___ day of April 2011.

_____
MARK D. CLARKE
United States Magistrate Judge